359 So.2d 1074 (1978)
James B. LOFTON, Plaintiff-Appellee,
v.
S. H. CADE et al., Defendants-Appellants.
No. 6479.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1978.
Writ Refused July 3, 1978.
Emile E. Turner, Jr., New Orleans, for defendants-appellants.
Gahagan & Gahagan, H. C. Gahagan, Jr., Natchitoches, for plaintiff-appellee.
Whitehead & McCoy by Charles R. Whitehead, Jr., Natchitoches, Brittain & Williams by Jack O. Brittain, Natchitoches, Charles E. Welsh, Bossier City, Watson, Murchison, Crews & Arthur, William P. Crews, Jr., Natchitoches, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and FORET, JJ.
FORET, Judge.
This litigation arises out of an automobile accident on a two-lane blacktopped highway. The automobile involved was owned and operated by Alvin Strebeck. James Lofton was a passenger in the Strebeck car. The tractor-trailer was owned by Hertz and leased to Harmon Wood Company, Inc. The truck was driven by Michael Mitchell, an employee of Harmon Wood. As a result of the collision, Alvin Strebeck was killed, James Lofton was injured, and Michael Mitchell suffered no serious injury. The Strebeck vehicle pulled onto the highway from a dirt access road approximately 75 feet in length. The truck was proceeding in the opposite direction. The collision occurred less than 200 feet from where the dirt access road intersects the highway. The most serious factual dispute is whether the Strebeck vehicle was in the proper lane of travel.
James Lofton instituted this suit against Mitchell and Harmon Wood, Inc. (all other defendants were dismissed), seeking damages for personal injuries sustained in the collision. The widow of Alvin Strebeck, individually and on behalf of her two minor children (Christy Lee and Carrie Sue), intervened in their suit against both defendants. Confederate Memorial Medical Center also intervened against the defendants seeking payment of medical services rendered to James Lofton. A jury verdict was rendered for all parties as follows:

*1075
(1) James B. Lofton _________________ $ 75,000.00
(2) Mrs. Strebeck, Individually _____ 25,000.00
(3) Mrs. Strebeck, on behalf of her
 two minor children ______________ $100,000.00

The defendants have perfected this suspensive appeal. James Lofton has answered the appeal seeking an increase in damages awarded from $75,000 to $100,000 and a separate judgment for intervenor, Confederate Memorial Medical Center, for $2,516.65. Mrs. Strebeck has answered the appeal seeking an increase in damages awarded to her individually from $25,000 to $100,000.
The issues presented on this appeal are:
(1) Was Michael Mitchell guilty of any negligence which was the proximate cause of the accident;
(2) Was Alvin Strebeck contributorily negligent and did James Lofton assume the risk for riding with a driver he knew or should have known was allegedly intoxicated;
(3) Were the instructions given to the jury proper;
(4) Is it permissible to allow a juror to take notes of counsel's arguments into the jury room for deliberation;
(5) Were the damages awarded proper;
(6) Should there be a separate judgment against Mitchell and Harmon Wood Company, Inc. for intervenor Confederate Memorial Medical Center.
We are of the opinion that the principal issue involved is a factual one, and of course we are not permitted to substitute our judgment in the absence of manifest error where there is a reasonable evidentiary basis for the findings of the trial court. Save and except as otherwise held hereinafter, we find no reversible error in the trial court's findings on the law and the facts.
With respect to the claim of Confederate Memorial Medical Center for $2,516.65, we are of the opinion that the $75,000 awarded to James B. Lofton included the claim of Confederate Memorial. No additional award is warranted.

ANSWER TO APPEAL BY INTERVENOR, GAIL STREBECK
The appellee-intervenor, Gail Strebeck, filed an answer to the above appeal requesting an increase in the award made to her of $25,000 to $100,000. The appellee-intervenor alleges that the jury abused its discretion in awarding only $25,000 to Mrs. Strebeck.
The low verdict to Mrs. Strebeck, individually, was no doubt in some way connected with the fact that Mrs. Strbeck admitted on direct examination that she and her deceased husband had had the customary marital quarrels. Furthermore, she testified that she intended to remarry, and in fact the man she planned to marry was living with her and her children at the time of trial. However, the decedent's father testified that his son had a good relationship with the plaintiff and her children. He also testified that his son and his family would visit the father and mother almost every weekend. There was additional testimony that the deceased was a good father and husband, and that the family life between the decedent and Mrs. Strebeck was generally good. No testimony to the contrary was introduced by the defendant.
The Louisiana jurisprudence is well settled that the remarriage or engagement to remarry of a surviving spouse can have no effect upon that spouse's right of recovery, and is not to be considered in mitigation or reduction of the damages otherwise due. In McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183 (1961), the Supreme Court stated that ratio decidendi of this doctrine is that the loss suffered by the surviving spouse is determinable by conditions which exist at the date of the wrongful death, as this is the time when a right and a cause of action for the damages arises; and that the tort feasor will not be permitted to show, and rely on, and hence to benefit from, a remarriage, or an intended remarriage in seeking a reduction of the damages for which he is responsible.
*1076 In Jones v. Kansas City Southern Railway Co., 137 La. 178, 68 So. 401 (1915) the Louisiana Supreme Court held that evidence of the engagement of the widow is irrelevant and immaterial. The Court stated:
"Our reconsideration of the matter has led to the conclusion that evidence as to the engagement of the plaintiff to be again married was irrelevant, for non constat that the engagement would result in marriage (and plaintiff's counsel, in their reply brief, say that it has not yet done so); and, if it should so result, non constat that the condition of the plaintiff will thereby be bettered."
We are of the opinion that the jury committed manifest error in its award of only $25,000, for all damages, to Mrs. Strebeck. Having so concluded, we must now examine what would be the lowest possible award which the jury could have made under the rule of Coco v. Winston Industries, Inc., 341 So.2d 332 and its progeny.
Certainly the jury had no choice but to award to Mrs. Strebeck the amount of $1,214.42 for funeral expenses, and $750 as the market value of the automobile which was destroyed in the accident. The other remaining items of damages then are for loss of support, and for loss of love, affection, companionship, etc.
With reference to loss of support, counsel for Mrs. Strebeck has referred us to the case of Hebert v. Patterson Truck Line, Inc., 247 So.2d 886 (La.App. 3 Cir. 1971). In Hebert, the deceased was 22 years of age at the time of the death (compared to the decedent in this case being 28 years old), and his income tax return for the year prior to death indicated he had gross earnings of $3,795.97. In the case at bar, decedent-Strebeck's employer testified that the decedent had earned $6,210 for the period January, 1975, through October, 1975.
The settled jurisprudence of this State is that damages for loss of support are speculative in nature and cannot be calculated with mathematical certainty. The most the court can do in such cases is to exercise sound judicial discretion and award an amount which, considering all the circumstances, seems just to both parties and is not unduly oppressive to either. See Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968) and McFarland v. Illinois Central Railroad Company, supra. In Hebert, an opinion authored by one of the members of this panel awarded $80,000 for loss of support based on gross earnings of $3,795.97. In our opinion, in the case at bar, the lowest amount which the jury could have awarded to Mrs. Strebeck for loss of support would be $40,000, and we accordingly make that award to her.
With reference to loss of love, affection, and companionship, it would be of no useful purpose and furnish no standard to delve into the voluminous jurisprudence on this issue. In Hebert, in 1971, this Court awarded the amount of $15,000 for loss of love, affection, and companionship. We would mention, however, a recent case emanating from this Court, Fowler v. Western Union Telegraph Co., et al. (Our docket number 6427) 357 So.2d 1305 (La.App. 3 Cir. 1978), wherein this Court affirmed an award of $90,000 for loss of love, affection, and companionship to a 73-year-old man for the death of his 69-year-old wife. In our opinion, the lowest amount which the jury should have awarded to Mrs. Strebeck for loss of love, affection, and companionship should be $15,000.
For the foregoing reasons, the judgment of the trial court is affirmed in all respects except that the award to Mrs. Gail Strebeck, individually, is increased to $56,964.42, with legal interest thereon from date of judicial demand.
All costs of this appeal are assessed against the defendant.
AMENDED AND AFFIRMED.