79 So.2d 120 (1955)
Whitney L. GETER
v.
The TRAVELERS INSURANCE COMPANY OF HARTFORD, CONNECTICUT.
No. 3954.
Court of Appeal of Louisiana, First Circuit.
March 25, 1955.
White & May, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellee.
LOTTINGER, Judge.
This is a workmen's compensation proceeding wherein the plaintiff seeks to recover benefits for total permanent disability. He alleged in his petition which was filed May 2, 1953, that while employed as a truck driver by the W. M. Chambers Truck Line on November 21, 1952, he suffered a serious accident with another automobile in the City of Baton Rouge, Louisiana, as a result of which he has been totally incapacitated to do work of any reasonable character. He prayed for compensation at the rate of $30 per week beginning November 28, 1952, not to exceed 400 weeks, with interest at 5% per annum on each past due payment, together with medical expenses and attorney fees not to exceed $1,000 each.
The defendant, workmen's compensation insurer of plaintiff's employer, first filed an exception of vagueness which was sustained by the trial judge. The plaintiff then amended his petition curing the deficiencies complained of. The defendant then answered, generally denying the allegations of both the original and amended petition. Subsequently, on April 22, 1954, the defendant filed a motion to dismiss the plaintiff's suit on the ground that the issues had become moot. This motion was heard and overruled. The matter was then tried on its merits and is now before us on an appeal taken by the plaintiff from a judgment dismissing his suit. The defendant has answered the appeal, urging that the motion to dismiss filed by it should have been sustained in the court below.
The facts pertinent to the motion to dismiss are undisputed, they having been stipulated to by the attorney for the plaintiff. Briefly stated, they are as follows:
The plaintiff, Whitney L. Geter, was admittedly injured in an automobile accident in the City of Baton Rouge on November 21, 1952. Subsequently, a claim for compensation benefits was made against the present defendant, which claim was denied.
*121 In due course this suit followed. On June 16, 1953, Geter filed a suit entitled "Whitney L. Geter v. Employers Mutual Liability Insurance Co. et al.," No. 45,890 of the Civil Docket of the Nineteenth Judicial District Court for the Parish of East Baton Rouge, which was a tort action against the driver and liability insurer of the automobile which had collided with him. Geter was successful in the prosecution of this suit and obtained a judgment of $12,838.15, which was satisfied on January 2, 1954.
The basis of the motion to dismiss is that the issues in the suit have become moot because the defendant in this compensation suit is entitled to credit for the sums received by Geter from the defendants in the tort suit. It is admitted that the Travelers Insurance Company did not intervene in the tort action.
The applicable provisions of our compensation law are to be found in LSA-R.S. 23:1101 et seq., which reads as follows:
LSA-R.S. 23:1101.
"When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.
"Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent."
LSA-R.S. 23:1102.
"If either the employee or his dependent, or the employer, brings suit against a third person as provided in R.S. 23:1101, he shall forthwith notify the other in writing of such fact and of the name of the court in which the suit is filed, and such other may intervene as party plaintiff in the suit."
LSA-R.S. 23:1103.
"In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, with a reasonable attorney's fee and his costs, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per centum per annum, as shall be satisfied by such payment.
"No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the other unless assented to by him."
The above quoted provisions of the compensation statute were considered by our brethren of the Orleans Circuit in the case of Smith v. McDonough, La.App., 29 So.2d 818, 822. In that case the employee had made a compromise settlement of his claim *122 against the tort feasor for the sum of $1,234.16. In a subsequent compensation proceeding against his employer, credit was given the latter for the amount received by the employee in the compromise settlement. The court held:
"In regard to the claim of the plaintiff in his answer to the appeal to the effect that the credit of $1,234.16 received in compromise should be disallowed, we observe that in paragraph 3 of Section 7, as amended, it is provided that where suit is brought by either the employer or the employee for damages against the third person and the amount recovered is not sufficient to discharge the obligation of the employer for compensation, he alone is entitled to the amount so recovered. In other words, a preference is given the employer whether the suit is brought by the employer or the employee and we believe a similar situation obtains where a compromise is made. Therefore, the credit was properly allowed."

In the later case of Ford v. Kurtz, 46 So. 2d 357, this court was presented with a set of facts almost identical to those of the Smith case, supra, and we followed its holding.
Counsel for plaintiff has placed much reliance on the case of Richmond v. Employers' Liability Assur. Corporation, La. App., 31 So.2d 442, 445, wherein the offset or credit claimed was denied. A reading of that case, as well as the opinion in the Ford case, supra, shows, however, that the reason the credit was disallowed was because, as stated in the Richmond case, "the third person was the United States Government, which was, at the time of the accident, not subject to suit on tort claims, and consequently no suit was ever or could be filed, and the only relief the plaintiff and/or the defendant could obtain was the introduction and passage of a claim bill * * * there was no `legal liability to pay damages' which could be litigated, determined and enforced."
Counsel for plaintiff also stresses the fact that the defendant did not intervene in the tort suit. This, to our minds, is of no moment, as an intervention by it would and could have accomplished nothing. This defendant has consistently taken the position that it is not liable to plaintiff for any compensation benefits whatever. How then could it have intervened in the tort action when the statute, LSA-R.S. 23:1103, provides that "the claim of the employer for the compensation actually paid shall take precedence * * *?"
A mere reading of the Louisiana Workmen's Compensation Law, LSA-R.S. 23:1101-23:1103, reveals that the statute does not contemplate a full double recovery by an injured employee in both tort and workmen's compensation. The statute provides, in the words of Mr. Malone at page 470 of his book entitled "Louisiana Workmen's Compensation Law and Practice," "That the victim should not be entitled both to full damages and to compensation." It is likewise interesting to note what Mr. Malone stated in his said treatise on page 477 under Section 368 entitled "Remedies of Employer."
"The employer who has been obliged to pay compensation because of the fault of some third party has three means available for redress: (1) He may proceed directly against the wrongdoer for the compensation he has already paid and also for the compensation he will be obliged to pay in the future, together with reasonable attorney's fees and costs; (2) he may intervene in any suit brought by the employee and insist that the damages be so apportioned as to give him precedence for the amount he has actually paid, together with reasonable attorney's fees and costs. The employee is entitled to a judgment for any remaining excess up to the full amount of the third party's liability. Upon satisfaction of the employee's judgment, the employer's obligation for further compensation ceases pro tanto; (3) if the employer was not notified, or otherwise failed to intervene in the employee's suit, he is entitled to credit against any compensation due *123 the employee for money received in satisfaction of the employee's judgment against the third party."

In the instant case, Geter, after having recovered full damages from the person who injured him, now seeks the double recovery which the statute forbids. While the precise question here presented has apparently never been passed upon, we think that the Ford and Smith cases, dealing with closely analogous situation, are controlling. Some question has been presented as to the computation of future credit to which defendant would be entitled. Counsel for defendant in their brief argue the matter as follows:
"The statute says that it shall be `computed at six per centum per annum.' Since the payment to the employee is in a lump sum, it seems clear that the statute could only mean that the lump sum should be computed as earning six per cent interest during the period of credit. This interpretation would be in accord with the way lump sum settlements are made where the weekly payments are discounted or computed at eight per cent per annum.
"Assuming for the purpose of this computation that Geter is entitled to a judgment herein as prayed for (the judge a quo held, after trial, he was not entitled to anything), he would first be entitled to a judgment of $1,000.00 for medical expenses, with 5% interest from May 2, 1953, to January 2, 1954. This would amount to a total of $1,029.19 and would reduce the total fund ($12,838.15 minus $1,029.19) to $11,808.96.
"At the time of the payment by the tort feasor, there would have been due Geter a maximum of 58 weeks of compensation from November 22, 1952 to January 2, 1954; this would total $1,740.00 principal and approximately $50.00 interest or a total of $1,790.00 which would reduce the fund to $10,018.96.
"Further assuming that Geter could prove he was entitled to penalties and attorneys' fees because the action of Travelers in denying liability was arbitrary and capricious, the penalty of 12% on the 58 weeks of past due compensation as of January 2, 1954, would amount to $208.80 ($1,740 × 12%) which would reduce the fund paid by the tort feasor to $9,810.16.
"Although the amount of the attorneys' fee which might be fixed by the Court is within the discretion of the Court, we have been unable to find any case where a fee of more than $750.00 was assessed. Wright v. National Surety Co., 1952, 221 La. 486, 59 So.2d 695. The Wright case was tried in the District Court, appealed to the Court of Appeal and then the Supreme Court. This may account for the large size of the fee in that case. In any event, let us assume that in the instant case the Court saw fit to fix a fee of $1,000.00. This would reduce the fund received from the tort feasor to $8,810.16 from which the future liability of The Travelers Insurance Company could be satisfied.
"Since 58 weeks of compensation would have been due as of the date of `payment' by the tort feasor, the future liability of Travelers for the balance of the maximum 400-week period would be 342 weeks. A fund of $8,497.62, computed at 6% per annum, would satisfy this obligation, leaving an excess fund of $312.54 over and above the absolute maximum that the plaintiff could ever hope to recover from the defendant in this suit. The computation was based upon a 6% discount table contained in the appendix of the booklet published by the Industrial Accident Board of the State of Texas, photostatic copies of said table being attached hereto and made a part hereof."
It appears to us that counsel's position is sound and that the plaintiff has recovered in excess of what he could possibly have received *124 in his compensation claim. This being true, and having already determined that defendant is entitled to credit for the amount received by plaintiff, the issues presented in the suit have become moot.
For the reasons assigned the judgment appealed from is amended, it being our holding that the motion to dismiss should have been sustained. In all other respects the judgment appealed from is affirmed.
Judgment amended and as amended affirmed.